

March 11, 2020

**FILED VIA ECF**

Honorable Judge Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      **RE:**    *Astacio et al v City of New York et al*, 19-cv-6862 (ENV) (CLP)
              Plaintiffs' Response to Letter Requesting Pre-Motion Conference to
              Seek Leave to File Motion to Dismiss Plaintiffs' Complaint

Dear Judge Vitaliano:

      Plaintiffs in the above-captioned action write in response to Defendants' letter requesting a pre-motion conference to seek leave to file a motion to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6) ("Letter").  For the reasons discussed herein, among others, if the Court permits Defendants to file their motion to dismiss (the "Motion"), the Motion should be denied.

      Defendants first argue that Plaintiffs' due process rights were not violated because they do not have a property interest "in their place on the waiting list and the Mitchell-Lama unit that would be available to them once they reached the top of the list."  Letter at 2.  Defendants are incorrect as Plaintiffs have a clear property interest in both.  With respect to Plaintiffs' position on the waiting lists, Plaintiffs secured their spots after paying an application fee, a portion of which is non-refundable.  *See* Complaint (ECF No. 1), ¶¶ 5-6.  Plaintiffs then moved up the list after waiting their turn.  Plaintiffs' position on the waiting list, earned through patience, good fortune, and the application fee, is a property interest that Plaintiffs were deprived of without sufficient notice or an opportunity to be heard and in violation of applicable law and regulations.

      Plaintiffs also possessed a property interest in the Mitchell-Lama units themselves.  Although Defendants concede that property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law,"  Letter at 2 (internal quotations omitted), Defendants attempt to diminish Plaintiffs' interest in the Mitchell-Lama apartments by characterizing it as a "mere hope or expectation that an applicant will maintain his or her spot on the waiting list and a Mitchell- Lama unit will subsequently be offered."  Letter at 2.  But the apartments are required to be allocated according to the Mitchell-Lama rules.  Those rules, in turn, are sufficiently definite to confer an expected

property right upon those whose names appear on the waiting lists and who satisfy the mandatory criteria to be awarded an apartment.

"In determining whether a given benefits regime creates a property interest protected by the Due Process Clause, [courts] look to the statutes and regulations governing the distribution of benefits." *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005) (citation omitted). "Where those statutes or regulations meaningfully channel official discretion by mandating a defined administrative outcome, a property interest will be found to exist." *Id*. (citation and internal quotes omitted). "The focus of this analysis is on the nature of the applicant's interest in the approval being sought, specifically whether the applicant has a clear entitlement to the approval sought from the government official or administrative body." *Waltz v. Town of Smithtown*, 46 F.3d 162, 168 (2d Cir. 1995). Plaintiffs have specifically alleged that the Mitchell-Lama rules "channel official discretion by mandating a defined administrative outcome": as long as an applicant falls within one of the three "priority" categories for an apartment, and also meets the family composition and income requirements, that applicant is entitled to the next available apartment. *See* Complaint, ¶¶ 26-39.

More than fifty years ago, the Second Circuit found that similar allegations were sufficient to state a claim under the due process clause. In *Holmes v. New York City Housing Authority*, 398 F.2d 262 (2d Cir. 1968), the plaintiffs sought class action status on behalf of "all applicants for public housing," and alleged "numerous … deficiencies in the admissions policies and practices" of NYCHA. *Id*. at 264. The plaintiffs alleged, among other things, that applications "are not processed chronologically, or in accordance with ascertainable standards, or in any other reasonable and systematic manner," that "[t]here is no waiting list or other device by which an applicant can gauge the progress of his case," and that "[m]any applications are never considered" by NYCHA. *Id*. They further alleged that "these procedural defects increase the likelihood of favoritism, partiality, and arbitrariness" in the allocation of low-income housing, and "deprive the plaintiffs of a fair opportunity to petition for admission to public housing" in violation of the due process clause. *Id*.

Presented with these allegations, the Second Circuit held that "the existence of an absolute and uncontrolled discretion in an agency of government vested with the administration of a vast program, such as public housing, would be an intolerable invitation to abuse." *Id*. at 265 (citation omitted). "For this reason alone due process requires that selections among applicants be made in accordance with ascertainable standards, … and, in cases where many candidates are equally qualified under these standards, that further selections be made in some reasonable manner such as by lot or on the basis of the chronological order of application." *Id*. The court rejected NYCHA's argument that the plaintiffs lacked standing: "As applicants for public housing, all are immediately affected by the alleged irregularities" in NYCHA's practices. *Id*. (citation omitted).

Here, Plaintiffs have similarly alleged "numerous deficiencies in the admissions policies and practices" in Defendants' administration of the Mitchell-Lama program. *See* Complaint, ¶¶ 26-39. While there are written guidelines mandating selection criteria for Mitchell-Lama apartments, those guidelines are not followed in many cases. Apart from the central failure by Defendants to assure that Plaintiffs and the Class are not arbitrarily removed from waiting lists and denied their right to apply for and obtain apartments, the Complaint also alleges, *inter alia*, that (1) succession rights are not followed, restricting the availability of apartments contrary to

the Mitchell-Lama rules; and (2) those who occupy apartments do not use them as their primary residence, thereby preventing those apartments from being made available to applicants. *See* Complaint, ¶¶ 41-101. These persistent and widespread practices effectively denied Plaintiffs and members of the Class the right to occupy Mitchell-Lama apartments they otherwise would have been eligible for. *See generally Connick v. Thompson*, 563 U.S. 51, 61 (2011) (municipal "practices so persistent and widespread as to practically have the force of law" constitute policy for purposes of Section 1983 liability).

Defendants next appear to argue that Plaintiffs' claims are somehow deficient because they declined at this time to bring claims against the housing companies that maintained the waiting lists and whom Defendants were statutorily required to oversee. *See* Letter at 2. But Plaintiffs are not required to bring their claims against the housing companies.

Defendants next argue that the housing companies "sent each of the named plaintiffs, except Mr. Salas, offer letters to notify them of an available apartment" and that "the waiting lists maintained by the housing companies indicated dates that these notification letters were sent and the notation 'NR' reflecting the housing company received 'no response' from the applicant." Letter at 2. As an initial matter, this is an improper fact-based argument under Rule 12(b)(6), where the Plaintiffs' plausible allegations must be accepted. *See, e.g., Gonzalez v. Carestream Health, Inc.*, 520 F. App'x 8, 10 (2d Cir. 2013) (court "must accept as true all plausible allegations of fact and draw all reasonable inferences in favor of the plaintiff"). And in fact, Plaintiffs allege just the opposite. *See* Complaint, ¶¶ 95-99.

Defendants also claim that Plaintiff Salas is not similarly situated to the other class representatives because he did not pay the application fee, and because no apartments have been offered to persons on his waiting list. *See* Letter at 2. But again Salas has alleged that he did pay the application fee, *see* Complaint, ¶ 17, so this factual dispute cannot be resolved at the pleading stage. *See Gonzalez*, 520 F. App'x at 10. Similarly, whether or not apartments have been, or should have been, offered to persons on the same waiting list as Salas is an issue that cannot be resolved on a motion to dismiss, but must await discovery.

Finally Defendants fault Plaintiffs for allegedly not having "pointed to [any] specific statutory duties that HPD has failed to perform," and that it is "simply not true" that HPD "has failed to ensure that housing companies keep records of letters sent to applicants, including the date the letters were sent, making it impossible to determine if letters actually were sent and if the entries on the waiting lists are accurate." Letter at 3. But Plaintiffs alleged just this just this by, *inter alia*, citing to audits of HPD and other records. *See, e.g.,* Complaint, ¶¶ 49-50, 56, 60-71, 75-85. And in any event, Defendants' are not permitted to contest Plaintiffs' plausible allegations at the motion to dismiss stage. *See Gonzalez*, 520 F. App'x at 10.

                                                  Respectfully submitted,

                                                  */s/ Michael Liskow*
                                                  Michael Liskow

                                                  Counsel for Plaintiffs

CC:    All Counsel of Record (by ECF)